ROSALIE LINDSAY-GUIMARÃES (Bar No. 11003)
LAURA HENRIE (Bar No. 12449)
**DISABILITY LAW CENTER**
205 North 400 West
Salt Lake City, Utah 84103
Phone: 801.363.1347
Fax:     801.363.1437
Email: rguimaraes@disabilitylawcenter.org
           lhenrie@disabilitylawcenter.org

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **NATALIA RICCI,**<br><br>Plaintiff,<br><br>v.<br><br>**BIOFIRE DIAGNOSTICS, LLC,**<br><br>Defendant. | **COMPLAINT**<br><br>**(JURY DEMANDED)**<br><br>Civil No. _2:20-cv-00001-RJS_<br><br>Judge _Judge Robert J. Shelby_ |

Plaintiff, Natalia Ricci ("Ms. Ricci" or "Plaintiff"), by and through her undersigned attorneys, hereby complains and alleges against Defendant, BioFire Diagnostics, LLC ("BioFire" or "Defendant"), as follows:

## I.  NATURE OF THE CLAIMS

1.  This is a disability discrimination action brought by Plaintiff under the Americans with Disabilities Amendments Act of 2008 ("ADA"), codified at 42 U.S.C. §§ 12101 *et seq*.

2.  Plaintiff seeks injunctive relief, equitable relief, punitive damages, and monetary relief as compensation for Defendant's violations of her rights under the ADA pursuant to 42 U.S.C. § 12188, and attorney fees and costs pursuant to 42 U.S.C. § 12205.

## II.  PARTIES

3.  Defendant is a corporation organized under the laws of the State of Delaware, with its headquarters in Salt Lake City, Utah. It operates a manufacturing facility in Salt Lake City, Utah.

4.  Defendant is a corporation that employs more than fifteen employees.

5.  Plaintiff is an individual residing in the State of Utah, Salt Lake County, and at all times relevant to the allegations in this Complaint worked for BioFire at its manufacturing facility located at 515 Colorow Drive, Salt Lake City, Utah 84108.

6.  Plaintiff has been diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder. These medical conditions are physical or mental impairments that substantially limit several of Plaintiff's major life activities, including, but not limited to, sleeping, thinking, and concentrating.

### III. JURISDICTION AND VENUE

7. On about September 20, 2019, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability for Defendant's failure to promote her.

8. On about October 3, 2019, the EEOC issued a Dismissal and Notice of Rights ("Right to Sue notice") in which it indicated that no further action would be taken by the EEOC.[1]

9. Plaintiff has exhausted all available administrative remedies and now seeks relief in federal court.

10. This Court has jurisdiction to hear and decide Plaintiff's civil claims pursuant to 28 U.S.C. § 1331 and the ADA, 42 U.S.C. §§ 12101-12213. This Court has personal jurisdiction over Defendant because Defendant conducts business in the State of Utah.

11. Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue because all the employment practices alleged to be unlawful were committed within the jurisdiction of the Central Division of the District of Utah.

### IV. FACTUAL BACKGROUND

1. Ms. Ricci has been diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder. These medical conditions are physical or mental impairments that substantially

---

[1] *See* EEOC Right to Sue notice of October 3, 2019, attached hereto as Exhibit A.

limit several of her major life activities, including, but not limited to, sleeping, thinking, and concentrating.

2. Defendant is a company that specializes in molecular diagnostics with a manufacturing facility in Salt Lake City, Utah.

3. Ms. Ricci began working for Defendant in approximately October 2017 as a Quality Technician II in its manufacturing facility in Salt Lake City, Utah.

4. In approximately December 2017, Ms. Ricci disclosed the nature of her disability to Defendant's Human Resources Generalist, Ashley Notti, when she began to experience an aggravation of symptoms related to her disability.

5. In approximately May 2018, Ms. Notti assisted Ms. Ricci with a reasonable accommodation under the ADA. Specifically, Ms. Ricci was provided the accommodation of working part-time with a requirement that she provide annual medical documentation updates to Defendant's human resources department. Ms. Ricci's accommodated schedule required her to work three eight-hour shifts per week, for a total of twenty-four hours per week.

6. In approximately July 2018, Defendant posted an opening for a Quality Technician III, which position was the next level up from Ms. Ricci's Quality Technician II position.

7. Ms. Ricci was interested in the Quality Technician III position because it was the next logical step for Ms. Ricci's advancement with Defendant.

8. In addition, Ms. Ricci believed she was adequately prepared for the promotion because as a Quality Technician II, she already performed several tasks that were performed by

Quality Technician IIIs, including the first steps in the process of completing device history records.

9. Ms. Ricci sent an email to Quality Manager Matt Scholl on July 25, 2018, and asked if she could be considered for the Quality Technician III position while maintaining her ADA accommodation of a part-time schedule.

10. Mr. Scholl was aware of Ms. Ricci's need for a part-time schedule as an ADA accommodation prior to Ms. Ricci's email of July 25, 2018.

11. On July 26, 2018, Mr. Scholl responded to Ms. Ricci's email, stating that: "All employees, if they feel they meet the requirements for the position, should feel free to apply to a position." Mr. Scholl did not inform Ms. Ricci that her ADA accommodation would preclude her from being considered for the Quality Technician III position.

12. Ms. Ricci ultimately chose not to apply for the Quality Technician III position that was posted in approximately July 2018.

13. In approximately October 2018, Defendant posted another opening for a Quality Technician III position on the swing shift.

14. Ms. Ricci applied for the available Quality Technician III position in approximately October or November 2018.

15. At the time Ms. Ricci applied for the Quality Technician III position in approximately October or November 2018, she continued to work as a Quality Technician II with an ADA accommodation of a part-time schedule. Ms. Ricci expected to continue to need the part-

time accommodation if she were promoted to the Quality Technician III position because the status of her disability had not changed.

16. In November 2018, Ms. Ricci was interviewed for the Quality Technician III position by her supervisor, Elisha Mirza, her former supervisor, Joe Stanton, and another supervisor, Luz Anderson.

17. Mr. Mirza, Mr. Stanton, and Ms. Anderson were aware prior to the interview with Ms. Ricci that Ms. Ricci worked a part-time schedule as an ADA accommodation.

18. Because Ms. Ricci knew that her three interviewers were aware of her need for a part-time schedule as an ADA accommodation, she did not believe that she needed to make a renewed request for accommodations with respect to the desired Quality Technician III position.

19. During the interview, at least one of the three supervisors conducting the interview mentioned that Ms. Ricci had already worked for Defendant for a significant time and wondered why she had not already been promoted to the Quality Technician III position.

20. After Ms. Ricci's November 2018 interview, she received an email from Mr. Stanton in which he assured Ms. Ricci that her interview had gone well.

21. After the November 2018 interview, Ms. Ricci also spoke with Mr. Mirza and he assured Ms. Ricci that her interview had gone well.

22. On November 27, 2018, Ms. Ricci received an email from Ms. Notti stating that Defendant was unable to consider her for the Quality Technician III position because the position required candidates to be able to work a full-time schedule of no less than forty hours per week.

23. At no time did Ms. Notti explore with Ms. Ricci whether any accommodations would enable Ms. Ricci to perform the essential functions of the Quality Technician III position.

24. On November 28, 2018, Ms. Ricci emailed Mr. Scholl to ask if anything could be done to enable her to be considered for the Quality Technician III position. Mr. Scholl subsequently arranged a meeting with Ms. Ricci for December 12, 2018, to discuss the matter.

25. On December 3, 2018, Defendant's recruiting team emailed Ms. Ricci to inform her that she had not been chosen for the Quality Technician III position because the company had "decided to pursue other candidates who more closely match the skills and experience required to excel in this role." The recruitment team did not state that Ms. Ricci's part-time accommodation disqualified her for the promotion.

26. On December 5, 2018, Ms. Ricci attended a staff meeting where it was announced that one of her colleagues, Douglas Nelson, would be promoted to the Quality Technician III position.

27. Ms. Ricci was aware that Mr. Nelson had only worked for Defendant for approximately three months at the time of his promotion. At that time, Ms. Ricci had worked for Defendant for approximately fourteen months.

28. On information and belief, Mr. Nelson did not have a disability or need accommodations at the time he was promoted to the Quality Technician III position.

29. At the same staff meeting on December 5, 2018, it was also announced that another colleague, Madisyn Rooklidge, would be promoted to the Quality Technician III position.

30. Ms. Ricci was aware that Ms. Rooklidge began working for Defendant as a Quality Technician I one month after Ms. Ricci began working for Defendant as a Quality Technician II.

31. On information and belief, Ms. Rooklidge did not have a disability or need accommodations at the time she was promoted to the Quality Technician III position.

32. On December 12, 2018, Ms. Ricci met with Mr. Scholl and manager Sara Wallace and asked whether the denial of her promotion to the Quality Technician III position could be reconsidered given her need for an ADA accommodation. Mr. Scholl responded that Ms. Ricci could not work part-time as a Quality Technician III and that it was "not common" for Defendant to have part-time employees.

33. At no time did Mr. Scholl or Ms. Wallace explore with Ms. Ricci whether any accommodations would enable her to perform the essential functions of the desired Quality Technician III position.

34. A short time after Ms. Ricci's December 2018 meeting with Mr. Scholl and Ms. Wallace, another Quality Technician III position opened.

35. Ms. Ricci did not apply for the available Quality Technician III position in reliance on what Mr. Scholl and Ms. Wallace had told her in the December 2018 meeting.

36. Ms. Ricci later learned that the available Quality Technician III position was given to Isiah Yang.

37. On information and belief, Mr. Yang started working for Defendant as a Quality Technician I approximately one year after Ms. Ricci began working for Defendant as a Quality Technician II.

38. On information and belief, Mr. Yang did not have a disability or need accommodations at the time he was promoted to the Quality Technician III position.

39. Ms. Ricci subsequently sought the assistance of the Disability Law Center. The Disability Law Center sent a letter to Defendant on March 25, 2019, requesting, among other things, that Ms. Ricci be promoted to the Quality Technician III position with her part-time ADA accommodation in place.

40. Defendant responded to Ms. Ricci's request in a letter from counsel dated April 18, 2019. In its response, Defendant reiterated its position that the Quality Technician III position "requires full-time work as an essential job function."

41. In Defendant's April 18, 2019, letter, it explained that a certain number of lots, known as "device history records," must be completed per week to meet forecasted business needs.

42. According to Defendant, the required number of device history records could not be completed if one of its Quality Technician IIIs worked only three shifts per week instead of five.

43. However, Ms. Ricci knew from observing the daily task assignments for her department over a period of several months that Mr. Nelson and Mr. Yang, who had been promoted

to the Quality Technician III position, were frequently scheduled to perform tasks other than device history records.

44. More specifically, Ms. Ricci observed from the daily task assignments that Mr. Nelson and Mr. Yang were frequently assigned tasks that are typically performed by lower-level Quality Technician IIs like Ms. Ricci.

45. Ms. Ricci observed from the daily task assignments that Mr. Nelson and Mr. Yang were consistently assigned to perform Quality Technician III-level tasks on only a part-time or less than part-time basis, while the remainder of their workweek involved completing tasks that lower-level Quality Technician IIs typically performed.

46. In June 2019, another Quality Technician III position opened.

47. By June 2019, Ms. Ricci was extremely confident that if she were permitted to complete device history records on a part-time basis like Mr. Nelson and Mr. Yang, she could successfully complete the required Quality Technician III tasks, especially given her success in the Quality Technician II position with a part-time accommodation.

48. Therefore, in June 2019, Ms. Ricci chose to apply a second time for the Quality Technician III position that had become available.

49. On June 25, 2019, Ms. Ricci met with Mr. Scholl, Ms. Notti, and Eric Scott, Associate Director of Quality Assurance. Mr. Scholl and the others advised Ms. Ricci that she could not be promoted because the Quality Technician III position required full-time work.

50. At the June 25, 2019, meeting, Mr. Scholl stated that Quality Technician IIIs were required to complete eight device history records per day to achieve Defendant's weekly production target. Mr. Scholl stated that if Ms. Ricci worked part-time as a Quality Technician III, she would not be able to complete the required number of device history records.

51. Ms. Ricci had previously been informed by a Quality Technician III colleague that the expectation conveyed to Quality Technician IIIs was to complete five device history records per day, not eight. Ms. Ricci had also been informed that completing four to five device history records per day was a common actual daily production rate for Quality Technician IIIs.

52. During the June 25, 2019, meeting, Ms. Ricci asked Mr. Scholl, Ms. Notti, and Mr. Scott why Mr. Nelson and Mr. Yang had been promoted but were, according to the daily assignment sheets, consistently scheduled to perform Quality Technician III tasks on only a part-time or less than part-time basis. No one responded to Ms. Ricci's question.

53. Mr. Scholl, Ms. Notti, and Mr. Scott made no effort during the June 25, 2019, meeting to explore with Ms. Ricci whether any accommodations would enable her to perform the essential functions of the Quality Technician III position.

54. At the conclusion of the meeting on June 25, 2019, Ms. Ricci informed Mr. Scholl, Ms. Notti, and Mr. Scott that she was resigning and gave her two weeks' notice.

55. Ms. Ricci felt that resigning was her only option because her many efforts to progress with Defendant had been in vain while her less qualified, non-disabled colleagues had repeatedly been promoted over her.

56. Ms. Ricci's last day working for Defendant was July 10, 2019.

57. During Ms. Ricci's more than twenty months of employment with Defendant, she had no disciplinary problems and received positive feedback from management regarding her performance.

58. As a Quality Technician II, Ms. Ricci earned approximately $19.26 per hour.

59. On information and belief, Ms. Ricci would have earned at least approximately $22.00 per hour if she had been promoted to the Quality Technician III position.

60. Defendant's failure to promote Ms. Ricci caused her to suffer financial losses and emotional distress.

## FIRST CLAIM FOR RELIEF

*Disability Discrimination (Failure to Provide Reasonable Accommodations)*
*in Violation of the ADA*

Plaintiff incorporates herein by reference all allegations made in previous paragraphs, and further alleges as follows:

61. Ms. Ricci is a person with a disability as defined by the ADA. Her mental health conditions are physical or mental impairments that substantially limits several of her major life activities, including, but not limited to, sleeping, thinking, and concentrating.

62. Ms. Ricci was qualified, with or without reasonable accommodations, to perform the essential functions of the desired Quality Technician III position. Ms. Ricci performed well in the Quality Technician II position, which involved completing several tasks that Quality Technician IIIs performed, including the first steps in the process of completing device history

records. Ms. Ricci was more experienced than several employees who were promoted to the Quality Technician III position over her. When Ms. Ricci applied for the Quality Technician III position, the interviewers expressed surprise that she had not already been promoted. The interviewers never expressed concern about her ability to perform as a Quality Technician III on a part-time basis. Based on the actual time Mr. Nelson and Mr. Yang spent completing device history records per week as Quality Technician IIIs, Ms. Ricci's part-time schedule would have allowed her to complete device history records in the same position at a comparable, if not better, production rate. Ms. Ricci was qualified to perform the essential functions of the Quality Technician III position with a part-time accommodation, and possibly other additional accommodations that could have been explored through a good faith interactive process.

63.     Ms. Ricci requested a plausibly reasonable and effective accommodation. Defendant claimed that full-time work was needed for Quality Technician IIIs to achieve desired weekly production levels. However, when Ms. Ricci asked Mr. Scholl, Ms. Notti, and Mr. Scott why Mr. Nelson and Mr. Yang had been promoted to the Quality Technician III position but were not consistently scheduled to perform Quality Technician III-level tasks, they had no response. Ms. Ricci knew that she should be able to complete a comparable amount of device history records per week on a part-time basis that Mr. Nelson and Mr. Yang completed given their frequent assignments to perform lower-level Quality Technician II tasks. It was therefore reasonable for Ms. Ricci to expect to be promoted with a part-time accommodation that would allow her to

complete device history records for the same amount of hours per week, if not more, than two other Quality Technician IIIs who had been promoted over her.

64.     The reasonable accommodations Ms. Ricci requested were not granted. Ms. Ricci was denied the promotion to the Quality Technician III because of her need for a part-time accommodation the two times she applied and in response to a third request made by the Disability Law Center. In response to Ms. Ricci's two applications and the Disability Law Center's third request, Defendant failed to engage in a good faith interactive process with Ms. Ricci to explore how Ms. Ricci might be able to perform the essential functions of the desired Quality Technician III position with a part-time accommodation and possibly other additional accommodations. Rather, Defendant claimed, without further discussion, and contrary to actual scheduling practices, that Quality Technician IIIs needed to work full-time on completing device history records to meet desired production levels.

65.     Ms. Ricci suffered adverse employment actions in the form of financial losses and constructive discharge as a direct result of Defendant's failure to promote Ms. Ricci and provide reasonable accommodations for the desired Quality Technician III position. Ms. Ricci continued to work as a Quality Technician II at a pay rate of at least approximately $2.00 less per hour than the pay rate for the desired Quality Technician III position. Ms. Ricci was constructively discharged when Defendant denied Ms. Ricci's two requests for a promotion and the Disability Law Center's third request based on her need for a part-time accommodation. Defendant denied Ms. Ricci's requests without engaging in the good faith interactive process. Defendant also denied

Ms. Ricci's requests without explaining why at least two colleagues promoted above Ms. Ricci were permitted to perform Quality Technician III-level tasks on a part-time or less than part-time basis. It was therefore objectively reasonable for Ms. Ricci to assume that she was not a valued employee and that she would not have a meaningful future with Defendant as long as she needed a part-time accommodation for her disability.

66. Ultimately, Defendant discriminated against Ms. Ricci by failing to promote her to the Quality Technician III position with reasonable and effective accommodations.

## SECOND CLAIM FOR RELIEF

*Disability Discrimination (Disparate Treatment) in Violation of the ADA*

Plaintiff incorporates herein by reference all allegations made in the previous paragraphs, and further alleges as follows:

67. Ms. Ricci is a person with a disability as defined by the ADA. Her mental health conditions are physical or mental impairments that substantially limits several of her major life activities, including, but not limited to, sleeping, thinking, and concentrating.

68. Ms. Ricci was qualified, with or without reasonable accommodations, to perform the essential functions of the desired Quality Technician III position. Ms. Ricci performed well in the Quality Technician II position, which involved completing several tasks that Quality Technician IIIs performed, including the first steps in the process of completing device history records. Ms. Ricci was more experienced than several employees who were promoted to the Quality Technician III position over her. When Ms. Ricci applied for the Quality Technician III

position, the interviewers expressed surprise that she had not already been promoted. The interviewers never expressed concern about her ability to perform as a Quality Technician III on a part-time basis. Based on the actual time Mr. Nelson and Mr. Yang spent completing device history records per week as Quality Technician IIIs, Ms. Ricci's part-time schedule would have allowed her to complete device history records in the same position at a comparable, if not better, production rate. Ms. Ricci was qualified to perform the essential functions of the Quality Technician III position with a part-time accommodation, and possibly other additional accommodations that could have been explored through a good faith interactive process.

69. Ms. Ricci suffered adverse employment actions in the form of financial losses and constructive discharge as a direct result of Defendant's failure to promote Ms. Ricci and provide reasonable accommodations for the desired Quality Technician III position. Ms. Ricci continued to work as a Quality Technician II at a pay rate of at least approximately $2.00 less per hour than the pay rate for the desired Quality Technician III position. Ms. Ricci was constructively discharged when Defendant denied Ms. Ricci's two requests for a promotion and the Disability Law Center's third request based on her need for a part-time accommodation. Defendant denied Ms. Ricci's requests without engaging in the good faith interactive process. Defendant also denied Ms. Ricci's requests without explaining why at least two colleagues promoted above Ms. Ricci were permitted to perform Quality Technician III-level tasks on a part-time or less than part-time basis. It was therefore objectively reasonable for Ms. Ricci to assume that she was not a valued

employee and that she would not have a meaningful future with Defendant as long as she needed a part-time accommodation for her disability.

70.     The circumstances surrounding the adverse employment actions Ms. Ricci suffered give rise to an inference of discrimination based on her disability. The sole reason Defendant gave for denying three requests for Ms. Ricci's promotion was her need for a part-time schedule as an ADA accommodation. Defendant claimed that device history records could only be produced at desired levels by Quality Technician IIIs working full-time. Yet Defendant's claims were belied by the actual daily task assignments for Quality Technician IIIs. Based on the task assignments of at least two Quality Technician IIIs who had been promoted over Ms. Ricci, device history record completion did not need to be done on a full-time basis by all Quality Technician IIIs. Ms. Ricci should have been able to complete at least the same number of device history records per week as Mr. Nelson and Mr. Yang, who were frequently assigned to complete lower-level Quality Technician II tasks instead of device history records. Nevertheless, Defendant failed to engage in good faith in the required interactive process to explore ways that Ms. Ricci might perform the essential functions of the desired position with a part-time accommodation and possibly other additional accommodations. Rather, Defendant continued to promote non-disabled employees with less experience to the Quality Technician III position. Given the circumstances surrounding the adverse employment actions Ms. Ricci suffered, Defendant's claim that Ms. Ricci did not qualify for the desired Quality Technician III position raises an inference of disability discrimination.

71.     Ultimately, Defendant discriminated against Ms. Ricci because of Ms. Ricci's disability and need for reasonable accommodations by treating her differently than the non-disabled, less experienced employees who were promoted above her.

### PRAYER FOR RELIEF

WHEREFORE, these premises considered, Plaintiff NATALIA RICCI respectfully requests that this Honorable Court:

A.      Enter a permanent injunction enjoining Defendant from engaging in employment practices that discriminate based on disability;

B.      Enter an order requiring Defendant to make Ms. Ricci whole by placing her in the position she would have occupied in the absence of discrimination, including back pay, front pay, interest, and other benefits that would have accrued;

C.      Enter an order requiring Defendant to pay compensatory and punitive damages as a jury may assess;

D.      Award Ms. Ricci her reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205; and

E.      Award such other and further relief as justice may require.

## DEMAND FOR JURY TRIAL

Ms. Ricci hereby requests a jury trial.

RESPECTFULLY SUBMITTED on the 2nd day of January 2020.

        By:    */s/ Rosalie Lindsay-Guimarães*
                ROSALIE LINDSAY-GUIMARÃES
                LAURA HENRIE
                **DISABILITY LAW CENTER**

                *Attorneys for Plaintiff*